UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARIBE TANKERS LTD.** | * |
| | * CIVIL ACTION |
| Plaintiff, | * |
| | * No. |
| V. | * |
| | * |
| M/V AUTUMN, her engines, | * SECTION " " |
| tackle, etc., *in rem*, and NEMO | |
| SHIPMANAGEMENT S.A., *in personam* | * MAGISTRATE ( ) |
| | * |
| Defendants. | * |

*******************************************

## ORIGINAL VERIFIED COMPLAINT

Plaintiff, Caribe Tankers Ltd. ("Caribe Tankers"), by and through undersigned counsel and for its Verified Complaint against Defendants M/T AUTUMN, her engines, tackle and appurtenances, *in rem*, and Nemo Shipmanagement, S.A. (hereinafter "Nemo"), *in personam*, avers upon information and belief as follows:

1.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction and venue are proper under 28 United States Code § 1333 and Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the

Federal Rules of Civil Procedure. This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for foreign arbitration.

2.

At all material times, the AUTUMN was and is an ocean going bulk cargo carrier bearing IMO No. 9416795 and flying under the flag of the Marshall Islands. The AUTUMN is now, or will be during the pendency of this suit, within the jurisdiction of the Middle District of Louisiana.

3.

At all material times, Nemo was and is a company organized and operating pursuant to the laws of a foreign country, and was and is the registered owner of the AUTUMN.

4.

At all material times, Caribe Tankers was and is a company organized and operating pursuant to the laws of a foreign country, and was the time charterer of the AUTUMN.

5.

On or about December 20, 2012, Nemo (as Owners) and Caribe Tankers (as Charterers) entered into a time charter party for the AUTUMN whereby Caribe Tankers agreed to charter the vessel from Nemo for a period of 45 to 120 days. The parties' agreement was memorialized in the form of a fixture recap which adopted and incorporate the standard terms of the Shelltime 4 form charter party as amended by the express terms of the fixture recap. *See* Fixture Recap and Shelltime 4 form charter party, attached as Exhibit 1 *in globo* (hereinafter collectively, the "AUTUMN Charter Party"). The charter of the AUTUMN was later extended by mutual agreement of Nemo and Caribe Tankers for an additional six (6) months. *Id.*

6.

Pursuant to the terms of the AUTUMN Charter Party, Caribe Tankers was entitled to use and sublet the entire carrying capacity of the AUTUMN in exchange for payment of charter hire in the amount of $9,000/day, less an address commission of 2.50%. The AUTUMN Charter Party further provided that Caribe Tankers would redeliver the vessel to Nemo at the conclusion of the charter's term with "about the same quantity of bunkers" onboard as at the commencement of the charter, and that any difference in the quantity of bunkers onboard would be settled between Caribe Tankers and Nemo based on the price paid for the bunkers onboard as of the commencement of the charter.

7.

Nemo delivered the AUTUMN to Caribe Tankers on or about December 31, 2012. At the time of her delivery to Caribe Tankers, the AUTUMN had bunkers onboard including 50.865 MT of HFO, 218.11 MT of LFO, and 47.150 of MGO, with a total value of $271,176.65. *See* Hire Statement attached as Exhibit B.

8.

Caribe Tankers redelivered the AUTUMN to Nemo on or about August 8, 2013. At the time of her redelivery, the AUTUMN had onboard bunkers including 85.660 MT of HFO, 228.070 MT of LFO, and 54.400 MT of MGO, with a total value of $313,013.64. *See* Hire Statement, attached as Exhibit B.

9.

Under the terms of the AUTUMN Charter Party, Nemo is obligated to compensate Caribe Tankers for the excess value of bunkers onboard the vessel at redelivery as compared to delivery.

On the basis of the figures stated in Paragraph 8, Nemo is indebted to Caribe Tankers in the amount of $41,836.99 for excess bunkers onboard the AUTUMN at the time of redelivery.

10.

During the course of the 219 days during which the AUTUMN was on charter Nemo earned total charter hire of $1,963,278.19 (*i.e.*, $9,000/day X 219.5104 days days – commission of $19,632.42). The sum of charter hire payments made by Caribe Tankers, which was obligated to make such payments 15 days in advance, was $2,006,282.10. Under the AUTUMN Charter Party, upon redelivery of the vessel Nemo was obligated to refund to Caribe Tankers the credit of $43,003.91. *See* Hire Statement, attached as Exhibit B.

11.

During the course of the AUTUMN's charter, Caribe Tankers incurred approximately $12,727.12 in costs and expenses for Nemo's account ,which costs and expenses Nemo is obligated to reimburse Caribe Tankers for under the terms of the AUTUMN Charter Party. *See* Hire Statement, attached as Exhibit B.

12.

Despite due demand by Caribe Tankers, Nemo has refused to compensate Caribe Tankers for: (1) the excess value of bunkers onboard the AUTUMN at the time of her delivery, as described in Paragraph 9; (2) the overpayment of charter hire by Caribe Tankes as described in Paragraph 10; and/or (3) the expenses for Nemo's account incurred by Caribe Tankers, as described in Paragraph 11.

13.

In sum, Nemo is obligated to Caribe Tankers in the principal sum of $97,568.02 for final settlement of the AUTUMN Charter Party. Nemo's refusal to remit this amount to Caribe Tankers constitutes a breach of the AUTUMN Charter Party by Nemo.

14.

In addition to the foregoing, Nemo further breached the AUTUMN Charter Party by causing and/or allowing the AUTUMN to lose approval of various Oil Majors during the charter's term. This breach by Nemo substantially reduced the charter hire which Caribe Tankers could earn by subletting the vessel, causing substantial damages to Caribe Tankers. As a result of this breach by Nemo, Caribe Tankers suffered a loss of approximately $111,741.60 in the form of lost sub-charter hire.

15.

As a result of its numerous breaches of the AUTUMN Charter Party, Nemo is indebted to Caribe Tankers in the total principal amount of TWO HUNDRED NINE THOUSAND THREE HUNDRED NINE DOLLARS AND SIXTY TWO CENTS ($209,309.62).

**RULE B ALLEGATIONS**

16.

Caribe Tankers, by this reference, incorporates all foregoing allegations as Rule C allegations as if repeated herein *in extensor*.

17.

On information and belief, Caribe Tankers cannot be found within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but has goods and chattels within this

District subject to seizure, arrest, and attachment, namely the M/T AUTUMN, her engines, tackle, apparel, furniture, bunkers, etc., which are presently within the District. Further, Nemo is a non-resident with no duly appointed agent for service of process within Louisiana, entitling Caribe Tankers to a Writ of Attachment pursuant to Rule B, executable against Nemo and all of its property within the district, including the M/T AUTUMN, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

## RULE C ALLEGATIONS

18.

Caribe Tankers, by this reference, incorporates all foregoing allegations as Rule C allegations, as if repeated herein *in extenso*.

19.

The breach of the AUTUMN Charter Party gives rise to a maritime lien against the M/T AUTUMN, her engines, tackle, etc., in favor of Caribe Tankers and entitles Caribe Tankers to a Warrant of Arrest commanding the seizure and detention of the M/T AUTUMN.

WHEREFORE, Plaintiff, Caribe Tankers Ltd. prays that:

1. This Verified Complaint be deemed good and sufficient;
2. Process in due form of law according to the practice of this Honorable Court issue against Nemo Shipmanagement S.A., citing it to appear and answer this Verified Complaint;
3. Process according to the rules and practices of this Court in causes of admiralty and maritime jurisdiction, particularly Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Procedures of the Federal Rules of Civil Procedure may issue against the M/T AUTUMN, her engines, tackle, boilers,

equipment, appurtenances, etc., *in rem* and as property of the defendant, Nemo Shipmanagement S.A., *in personam*;

4. After due proceedings are had, there be judgment rendered in favor of Caribe Tankers and against the M/T AUTUMN, *in rem*, and/or Nemo, *in personam*, and that said vessel be condemned and sold to satisfy the judgment to be entered in favor of Caribe Tankers in the full amount of its claims, together with interest, costs and attorney's fees, as set forth above;

5. Process according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction, issue to attach and seize in the amount sued for, Nemo's goods, chattels, credits, monies and effects of any kind; and

6. Caribe Tankers be granted all further relief as justice and equity may permit.

Respectfully submitted,

/s/ *[signature]*
Keith C. Armstrong, #20679
Alan R. Davis, #31694
CHAFFE McCALL L.L.P.
2300 Energy Centre, 1100 Poydras Street
Baton Rouge, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

Dimitri P. Georgantas
CHAFFE McCall L.L.P.
Texas State Bar No. 07805100
Federal I.D. No. 2805
815 Walker Street, Suite 953
Houston, Texas 77002
Telephone: 713-546-9800

**Attorneys for Plaintiff Caribe Tankers Ltd.**

**PLEASE SERVE:**
M/T AUTUMN, her engines, tackle,
apparel, furniture, *etc.*, through her Master
Vessel is presently located at **Total Petrochemical, Mile 187.9 on the East bank side**

Defendant Nemo Shipmanagement S.A. through its agent, the Master of the M/T AUTUMN, presently located at **Total Petrochemical, Mile 187.9 on the East bank side**